## THE CAPITOL FUEL COMPANY, INC. v. NEW YORK CASUALTY COMPANY

COURT OF COMMON PLEAS    HARTFORD COUNTY    FILE No. 48501

Memorandum filed March 25, 1949

*Spellacy, Aron & Kenny,* of Hartford, for the Plaintiff.
*Day, Berry & Howard,* of Hartford, for the Defendant.

BORDON, J.  Although the legal problem here presented was considered in *Hoyt* v. *Factory Mutual Liability Ins. Co. of America,* 120 Conn. 156, our Supreme Court has never directly passed upon the question, and it was, therefore, necessary for

the court to chart a course and follow through. The *Hoyt* case was tried to the court, and it was there concluded that the insurer had not failed to meet either the test of good faith and honest judgment or the requirement to use that care and diligence which a person of ordinary prudence would exercise in the management of his own business. *Bartlett* v. *Travelers Ins. Co.*, 117 Conn 147. This being a jury case, the factual issues had to be submitted to the jury, and its finding, if substituted for the court's finding in the *Hoyt* case, would bring this case in harmony with it. There are elements in the *Hoyt* case which differ materially from those in the instant case. In this case liability and serious injuries were conceded. In fact the insured produced no evidence to controvert that of the injured and offered no medical testimony to dispute claimed serious injuries. The case went to the jury entirely on the plaintiffs' evidence. The defendant was informed by its counsel that the verdict might exceed the policy limit, although he gave it as his opinion that the case had a judgment value of between $10,000 to $15,000. In the *Hoyt* case both liability and extent of injuries were seriously disputed and an offer, compatible with the best judgment of the insurer, was made to settle the case. If an offer had been made in the instant case, representing the best judgment of the insurer, the court would not have hesitated to direct a defendant's verdict. But none was made. Instead it invited reduced offers from the injured without indicating what bottom would suit its fancy. The attorney for the injured informed the defendant and its attorney that he would accept a figure within the policy limit, and testified that an offer of $15,000 would have been accepted. He did not disclose his bottom asking price because, from his experience, any amount demanded by him would have become the subject of further compromise. Indeed, this is borne out by the evidence of Mr. Maxwell, defendant's attorney, who testified that if Mr. Cole, plaintiff's attorney, had asked $15,000 he would have offered $13,000 and ultimately would have attempted a settlement for $13,500 or $14,000. It seemed to the court, therefore, that it was for the jury to determine, from the evidence presented, whether the defendant had exercised that care and diligence which a person of. ordinary prudence would exercise in the management of his own business. The charge amply safeguarded the defendant's rights but left it to the jury to say whether the failure of the defendant to take affirmative action or exercise greater diligence in seeking a settlement represented its entire obligation to its insured.

A hasty examination of cases during the trial disclosed a divergence of judicial opinion on the subject. Some courts deny recovery where contractual obligations have been fully met. Others deny recovery where refusal to settle is in good faith and upon reasonable grounds for the belief that the amount required to effect a settlement is excessive. *Best Building Co.* v. *Employers' Liability Assurance Corporation,* 247 N. Y. 451. And still others permit recovery on the ground of negligence. *Douglas* v. *United States Fidelity & Guaranty Co.,* 81 New Hampshire 371.

The court decided to pursue the third course pricipally because of its opinion that the language of our Supreme Court in *Bartlett* v. *Travelers Ins. Co.,* supra, was in harmony with it. Actually, the charge borrowed much of the language of the *Bartlett* case. It is now contended that the weight of judicial authority favors the so-called New York rule as laid down in the *Best* case and that the court should have charged in accordance therewith.

Before charging the jury, the court gave serious consideration to the defendant's claims but decided that the facts in this case warranted a charge on due care and negligence, both of which included the "good faith" theory. The theory of "good faith" was appropriately applicable to the facts of the *Best* case, because an offer of $2,000 less than the asking price had been made by the insurer. That, of course, removed the question of negligence. The insurer had, at least, demonstrated its good faith by offering an amount which it regarded as adequate for a case of questionable liability. In what manner did the defendant in this case demonstrate good faith? By doing nothing at all and by refusing to offer even an amount that it considered adequate. And if we bear in mind that this was a case of admitted liability and admitted serious injuries which could have resulted in a verdict in excess of the policy limit, the failure or refusal of the defendant to explore the possibilities of settlement within the policy limit or failure to engage in affirmative action seeking such a settlement hardly constitutes good faith. Certainly it cannot be said that the vast experience of the defendant and its claim agents in handling thousands of such cases a year was properly implemented in this instance when it assumed the unwarranted attitude of seeking but not making offers. Experience has taught us, and must have taught the defendant, that attorneys for injured usually ask more than they expect to receive, and that by the process of negotiations and compromise a settlement figure is usually arrived at. And where liability and in-

juries are conceded, as in this case, the duty to negotiate vigor-ously and in good faith is even more urgent. The asking price during trial was $22,000. The defendant's claim attorney in the home office placed a value of $12,000 on the case, and the trial attorney thought it had a judgment value of $10,000 to $15,000. In any event, the plaintiff in that case was assured of a substan-tial verdict. Before argument to the jury the plaintiff indicated a willingness to settle within the policy limit, but such suggestion was not even dignified by a counter offer, nor was any discussion undertaken or authorized to ascertain how much under the policy limit would be accepted. That, in the opinion of the court, de-prives the defendant of the defense of good faith and constitutes conduct the propriety of which should be presented to the jury for determination. It is obvious that the defendant preferred to be venturesome and speculate with the outcome of the case in the hope that the verdict would save it a substantial sum. Self interest may have dictated and justified such a course, but due care, diligence and its duty to the plaintiff called for an honest effort to avoid the risk of loss to its assured.

The court has examined all the authorities in 71 A. L. R. 1467 and the later compilation in 131 A. L. R. 1499. A splendid article on this subject is contained in 62 Harvard Law Review 104 (November, 1948). From all the pertinent literature en-joyed by the court, it is concluded that the trend of judicial and text opinion favors the more just and modern theory of holding an insurer accountable for want of due care in handling a case against its assured.

The motion to set aside the verdict is denied.